JOHN GROVE, Appellant, v. JOHN BUSH, Appellee.

1. **Compromise:** ACTION TO ENFORCE AGREEMENT: EVIDENCE. In an action to enforce an agreement to settle litigation by compromise, the plaintiff testified that the defendant agreed to accept one hundred and ten dollars in settlement, and that he afterwards tendered that amount to the defendant. The latter admitted the tender, and that said amount was mentioned in the course of the negotiations for a settlement, but claimed that the sum agreed upon was one hundred dollars and costs, which made the amount one hundred and twenty-eight dollars and ninety-five cents, and in this the defendant was corroborated by his attorney. *Held*, that the evidence failed to establish the agreement claimed by the plaintiff.

2. **New Trial:** GROUNDS: NEGLECT TO DEFEND THROUGH ABSENCE OF COUNSEL. Where a judgment was rendered against a defendant in a county other than that of his residence through the failure of his attorney, because of other professional engagements, to be in attendance upon the court when the case was called for trial, and there was no evidence of bad faith on the part of the opposite party or of his attorneys, *held*, that the facts did not entitle said defendant to a new trial, although he had seen his attorney before the term of court at which said judgment was entered, and received his promise to be present at said term of court and notify him if he was needed.

3. **Injunction:** BOND: CONDITIONS: JUDGMENT AGAINST SURETIES: JURISDICTION. Where in an action to restrain the collection of a judgment the injunction bond was conditioned to pay all damages which might be adjudged against the petitioner, *held*, that the liability of the sureties was limited by the condition in the bond, which did not obligate them to pay the judgment enjoined, and that a judgment rendered against the sureties in the injunction proceedings for the amount thereof, was without jurisdiction and void.

*Appeal from Cerro Gordo District Court.*—HON. J. C. SHERWIN, Judge.

WEDNESDAY, OCTOBER 5, 1892.

ACTION in equity to enforce performance of an alleged agreement to compromise a judgment or to obtain a new trial. After a hearing upon the merits, judgment was rendered in favor of defendant. The plaintiff appeals.—*Reversed*.

*Geo. E. Clarke*, for appellant.

No appearance for appellee.

ROBINSON, C. J.—On the eighteenth day of December, 1874, the plaintiff gave to Gammon & Deering his promissory note for the sum of ninety-three dollars and forty-nine cents, with interest thereon at ten per cent. per annum payable on the first day of November, 1876. The note recited that it was given for a Marsh harvester. In the year 1886 the defendant, Bush, as assignee of the note, brought action upon it in the dis-

trict court of Cerro Gordo county.  The plaintiff, Grove, appeared in the action, and filed an answer in March, 1887.  Nothing further seems to have been done in the case until the next October.  On the twentieth day of October, 1887—that being the fourth day of the term,—Bush appeared by his attorneys, and, in the absence of Grove and his attorneys, obtained judgment on the note for two hundred and fifty-five dollars and sixty cents, an attorney's fee of twenty-three dollars and ninety cents, and five dollars and five cents costs.  Five days later Grove appeared by his attorney, and filed a motion to set aside the judgment, and for a new trial.  The motion was supported by affidavits.  Bush objected to the motion on the ground that it was not made in time, and on the further ground that it did not show facts sufficient to warrant the court in setting aside the judgment.  The motion was overruled the day after it was filed, presumably on the first ground.  This action was brought in July, 1888, for the purpose of enforcing an alleged agreement to compromise and satisfy the judgment; and, if sufficient ground for that relief is not shown, the plaintiff herein asks that the judgment be set aside, and a new trial granted.  A temporary injunction was issued to restrain the collection of the judgment.  On the twenty-seventh day of January, 1890, the district court dismissed the petition, and rendered judgment in favor of defendant, Bush, and against the sureties on the injunction bond, for three hundred and fifty-five dollars and forty cents, and twenty-five dollars and fifty-five cents costs.

I. The plaintiff claims, and some of the evidence tends to show, that he had a meritorious defense to the action on the note.  He further claims that after the judgment was rendered, and after the motion to set it aside had been overruled, his attorney, George E. Clarke, prepared a petition in equity, asking for a

1. COMPROMISE: action to enforce agreement: evidence.

retrial of the cause, and had it with him during the term of court held in Cerro Gordo county in March, 1888; that while there he saw the defendant, showed him the petition and told him he was about to file it, but that his client was willing to compromise the matter; that after talking with his attorney, Bush told Clarke he would accept one hundred and ten dollars as a compromise; that Clarke objected to the amount, but said he would try to induce his client to pay it; that Bush told him if his client would not pay that amount, one hundred dollars would be accepted; that Clarke returned to his home at Algona, where the plaintiff also resided, and after a day or two saw and explained to him the offer of compromise; that some time afterwards he paid Clarke one hundred and ten dollars for the purposes of the compromise, and that on the sixth day of June, 1888, that amount was tendered to the defendant in settlement of the judgment; but that he refused to accept it, stating that the tender was too late; that he had sent a transcript and execution to Kossuth county; that a levy had been made, and he would not be bluffed. The defendant admits the tender, but denies that he ever agreed to accept one hundred dollars or one hundred and ten dollars in settlement of the judgment. He states that he offered to accept one hundred dollars and the costs, which amounted to twenty-eight dollars and ninety-five cents, and is corroborated as to that by his attorney. He admits that the sum of one hundred and ten dollars may have been mentioned during the negotiations for a settlement, and it is quite probable that the attorney for the plaintiff received the impression that the judgment would be satisfied for that amount; but the burden is upon the plaintiff to prove the alleged agreement to compromise, and we are of the opinion that he has failed to do so by a preponderance of the evidence.

VOL. 86—7

II. To excuse his failure to appear in the action against him at the time judgment was taken, the plaintiff shows that he visited Clarke on Saturday, the fifteenth day of October, 1887, and was told by him that the term of court in Cerro Gordo county would commence the next Monday; that Clarke told him he would be in attendance at that court the next Tuesday or Wednesday and would notify him if he was needed, but that it was not probable the case would be reached for trial at that term. Clarke testifies that he had been very busy attending court in the county of his residence during the week preceding the opening of the court in Cerro Gordo county; that he had practiced in the court of that county regularly for seven or eight years and was familiar with the legal business of the county and the method of procedure and precedence given to cases by its court; that he had received and examined a calendar for the term; that he had important business in the supreme court, which required his attendance at Des Moines on Tuesday, the eighteenth day of October; that he was unexpectedly detained there by the absence of another attorney and did not reach his home until the evening of Friday, the twenty-first day of October; that he first learned that the judgment had been rendered on the next Monday, when he went to Cerro Gordo county; and that he had every reason to believe, from his knowledge of the docket and of the business of the court, that the cause could not be reached during the first week of the term. It does not appear that he made any effort other than the examination of the docket to ascertain when his case would be reached, nor that he relied upon any understanding with the adverse party that it would not be taken up in his absence. The case had been commenced and on the court docket for a year, and had been at issue for nearly seven months. It was the

2. NEW trial: grounds: neglect to defend through absence of counsel.

duty of the plaintiff to appear, by himself or attorney, when the case was reached for trial, if he could do so by being reasonably diligent; and he neglected to so appear at his peril. It is a matter of common knowledge that large numbers of cases on court calendars are frequently disposed of by dismissals, defaults, compromises, continuances and other means within a very brief time after the opening of the term, and that it is not, as a rule, prudent to defer attending to a case at the beginning of the term, even though a number of cases stand before it on the calendar. Parties are required to be diligent in the preparation of their cases for trial. The business engagements of counsel for the plaintiff were of such a nature as to appeal strongly to the courtesy of adverse counsel for an extension of time; but, so far as is shown, no effort to acquaint them with the facts was made. The engagements and enforced absence of his counsel would not necessarily have entitled the plaintiff to an extension of time in which to appear. If they would, a simple and very effectual means of securing a continuance would be for the party desiring it to employ an attorney who could not attend to his case. While courts should afford suitors reasonable opportunities to have the services of the attorneys whom they prefer, yet the business of the courts and the rights of adverse parties cannot be made to await the convenience of attorneys who have so large a clientage as to be unable to attend in due time to all the business intrusted to them. There is nothing in the case under consideration to indicate bad faith on the part of the plaintiff or his attorney, but there was nothing in the nature of the case which especially demanded the services of one attorney rather than of another; and, while the plaintiff undoubtedly preferred to have Clarke attend to it, yet we think, in the absence of an arrangement for an extension of time, he should have procured the services of

another attorney. Whether the plaintiff had a good
defense to the note is at least a doubtful question, but
one which we do not find it necessary to determine, for
we are of the opinion that he has failed to show
sufficient diligence to entitle him to a new trial, even
though a meritorious defense existed.

III. Section 3395 of the Code requires that when
an injunction is ordered in the cases contemplated in
the preceding sections, before it is issued,
a bond must be given, approved by the
clerk, and filed, "conditioned for the
payment of all damages which may be
adjudged against petitioner by reason of such
injunction." Section 3396 provides that when pro-
ceedings in a civil action or on a judgment or final
order are sought to be enjoined the bond must also "be
furthed conditioned to pay such judgment or comply
with such final order if the injunction is not made per-
petual, or to pay any judgment that may be ultimately
recovered against the party obtaining the injunction,
or the cause of action enjoined." The condition of the
bond given in this case is as follows: "If the said
John Grove shall and will pay all the damages which
may be adjudged against him by reason of such
injunction, then this obligation to be void; otherwise to
be and remain in full force and virtue." It will be
noticed that the condition of the bond is that required
by section 3395, for the payment of all damages which
may be adjudged against the petitioner by reason of the
injunction, and that it does not require the payment of
the judgment, as provided by section 3396. The
liability of a surety on an injunction bond is not to be
extended beyond the terms of the instrument.
2 High on Injunction, sections 1635, 1636; 10 Amer. &
Eng. Encyclopedia of Law, 991. The sureties on the
bond given in this case did not obligate themselves to
pay the judgment in controversy in any event, there-

3. INJUNCTION:
bond: condi-
tions: judg-
ment against
sureties: juris-
diction.

fore the court erred in rendering judgment against
them for its amount.    Moreover, the record fails to
show that the sureties were parties to this action.    The
signing of the bond did not make them parties.  . They
were not served with process of any kind, and entered
no appearance in the case. · In *Fountain v. West*, 68
Iowa, 380, it was said that damages caused by an
injunction cannot be assessed in the. original action.
See, also, 10 Amer. & Eng. Encyclopedia of Law, 993.
Section 3794 of the Revision of 1860 provided for the
assessment of damages in a summary way upon the
dissolution of the injunction, but in *Taylor v. Brownfield*
41 Iowa, 264, it was decided that damages could not be
so assessed under the Code.    In that case the rights of
sureties were not involved, but it is manifest that the
rule would apply to them with at least as much reason
and force as to their principals.    It follows from the
authorities cited that the district court did not have
jurisdiction of the sureties, and that its judgment
against them was also erroneous for that reason.
The judgment of the district court, so far as it refused
the relief demanded by the plaintiff, was correct, and
is affirmed, but so far as it awarded damages on the
injunction bond it is REVERSED.